UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAMELA GADE, | ) |
| Plaintiff, | ) No. 17 cv 2209 |
| v. | ) Magistrate Judge Susan E. Cox |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Pamela Gade ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability benefits under the Social Security Act. The Parties have filed cross-motions for summary judgment. For the reasons below, the Court remands this matter for further proceedings consistent with this Memorandum Opinion and Order. Plaintiff's Motion for Summary Judgment [dkt. 15] is granted; the Commissioner's Motion for Summary Judgment [dkt. 17] is denied.

**I.   Background**

   **a.   Procedural History**

Plaintiff filed an application disability benefits on July 3, 2013. [Administrative Record ("R") 159-62.] Plaintiff claimed an alleged onset date of disability as of June 1, 2008.[1] *Id.* Plaintiff's claims were denied initially and again at the reconsideration stage, after which Plaintiff timely requested an administrative hearing, held on October 13, 2015 before Administrative Law Judge ("ALJ") Robert M. Senander [R 98-99; 32-53.] Plaintiff was represented by counsel, and a Vocational Expert testified during the hearing. [R 32-53.] On December 16, 2015, the ALJ issued a written decision denying Plaintiff disability benefits. [R 16-24.] On January 17, 2017, the Appeals Council denied Plaintiff's

---

[1] Plaintiff's application alleges an onset date of January 1, 2012 [R 159], which was amended the same day to reflect an onset date of June 1, 2008 [R 161].

appeal, and the ALJ's decision became the final decision of the Commissioner. [R 1-6.] Plaintiff filed the instant action on March 22, 2017. [dkt 1.]

    b.    **Plaintiff's Background**

Plaintiff was born January 12, 1953, and was 55 years old on her alleged disability onset date. [R 28.] Plaintiff suffers from both mental and physical limitations. Plaintiff suffers from severe degenerative disk disease and obesity. [R 18; 484; 606.] Plaintiff has also received treatment for hypertension, and gastrointestinal issues, mild carpal tunnel syndrome in the left hand, depression, and alcohol abuse. [R 18-19; 22; 341; 395.] Additionally, Plaintiff suffers from back pain and anxiety. [R 41-48.]

Between April 30, 2013 to May 6, 2013, Plaintiff was admitted to the behavioral health unit of Provena Mercy Medical Center for Major Depressive Disorder and alcohol abuse. [R 501.] Plaintiff had combined alcohol with several Xanax pills, and made statements hinting at suicidal ideation in connection with this incident. [*Id.*] In October 2013, at a consultative psychiatric examination, Plaintiff was diagnosed with severe Major Depressive Disorder and was assigned a GAF score of 51, indicating serious symptoms.[2] [R 518.] Plaintiff was subsequently assessed multiple times at GAF levels in the 51-60 range, indicating moderate symptoms; these GAF assessments were not scored by a single value, but instead, the "moderate" range was indicated for Plaintiff's symptoms on 11/4/2013 [R 536]; 12/14/2013 [R 541]; 8/22/2014 [R 653]; 10/7/2014 [R 656]; 2/3/2015 [R 659]; and 7/4/2015 [R 662].[3]

---

[2] Although the Global Assessment of Functioning ("GAF") is not used in the most recent version of the Diagnostic and Statistical Manual of Mental Disorders ("DSM V"), it was used in the previous version of that text ("DSM IV"), and is often relied on by doctors, ALJs, and judges in social security cases. *See Steele v. Colvin*, No. 14 C 3833, 2015 WL 7180092 at *1 (N.D. Ill. Nov. 16, 2015). The lower the GAF score, the greater the degree of impairment. *Id.* A score between 41 and 50 indicates "serious symptoms" such as suicidal ideation, severe obsessional rituals, or frequent shoplifting or "any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job, cannot work)." A score between 51 and 60 represents "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning." *Id.* Anything above 60 would indicate mild symptoms. *Id.*

[3] On 7/22/2014, Plaintiff was assessed a GAF score in the "mildly symptomatic" 61-70 range.

### c. The ALJ's Decision

On December 16, 2015, the ALJ issued a written decision denying Plaintiff disability benefits. [R 16-24.] At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since her alleged onset date of June 1, 2008. [R 18.] At step two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease and obesity. [*Id.*] The ALJ found Plaintiff's hypertension and gastrointestinal problems to be nonsevere impairments, and after a consideration of the Paragraph B criteria, the ALJ found the same for Plaintiff's depression and alcohol abuse. [R 18-20.] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R 20.]

Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[4] to perform light work, with the exceptions that she can lift 20 pounds occasionally and 10 pounds frequently; stand or walk for 6 hours in an 8 hour workday; and could occasionally climb stairs and ladders, stoop, kneel, crouch, and crawl. [*Id.*] In making this RFC determination, the ALJ analyzed Plaintiff's medical record and discussed the weight (and reasons for that weight) he gave the opinions therein. [R 20-23.] Also while making his RFC determination, the ALJ referenced two separate September 2015 medical statements (*i.e.*, post-DLI evidence), despite not allowing Plaintiff to testify as to any post-DLI evidence at the administrative hearing. [R 23; 36; Section III, *supra*.]

At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as an office manager. [R 23.] Because of these determinations, the ALJ found Plaintiff not disabled under the Act. [R 24.]

### II. Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last

---

[4] RFC is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945.

3

insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision

deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535,539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

## III. Discussion

On appeal Plaintiff argues, *inter alia*, that the ALJ's failure to consider medical evidence gathered subsequent to the date last insured constitutes reversible error.

A plaintiff generally has the burden to prove their disability, and must establish that his/her impairment(s) began prior to the date last insured. *Pepper v. Colvin*, 712 F.3d 351, 355 (7th Cir. 2013) ("The critical inquiry is whether [claimant] became disabled at any time prior to…the date [claimant] was last insured."). While the best source for information about a plaintiff's condition for the period at issue is the evidence taken at that particular time, post-DLI evidence is still relevant and the ALJ must consider it. *Parker v. Astrue*, 597 F.3d 920, 925 (7th Cir.2010); *Halvorsen v. Heckler*, 743 F.2d 1221, 1226 (7th Cir. 1984); *Johnson v. Colvin*, 2016 WL 4771088, at *10 (N.D. Ill. Sept. 12, 2016); *Wieringa v. Colvin*, 2015 WL 1445487, at *6 (N.D. Ill. Mar. 26, 2015); *Wamser v. Colvin*, 2013 WL 5437352, *7-8 (N.D. Ill., September 30, 2013); *Kazmi v. Astrue*, 2012 WL 5200083, at *7-8 (N.D. Ill. Oct. 22, 2012); *Free v. Astrue*, 2011 WL 2415012, at *7-8, *10 (N.D. Ill. June 10, 2011); *Watkins v. Berryhill*, 2018 WL 747486, at *5 (S.D. Ill. Feb. 7, 2018); *Buis v. Colvin*, 2015 WL 566889, at *4 (S.D. Ind. Feb. 11, 2015).[5] Although a claimant's "condition may have worsened since [their DLI]…the Social Security regulations require a 'disability' finding before a claimant's date last insured." *Pepper*, 712 F.3d at 369. But this does not negate the maxim that post-DLI evidence must be considered by an ALJ.

---

[5] These cases almost wholly seem to deal with diseases/conditions that have a specific, well-known disease progression, where post-DIL evidence might be particularly illuminating as to a claimant's prior pre-DLI condition.

5

Unfortunately, though, ALJ in the instant matter made the damning statements to the Plaintiff during her administrative hearing that "[your] date last insured is December 31, 2013. So you could be in awful shape today. It doesn't make any difference for our hearing" and "I don't need to know about now" when Plaintiff tried to talk about her then-current medical symptoms. [R 36-37.][6] While Plaintiff did not point to any specific post-DLI evidence that might have supported a pre-DLI disability finding based on such post-DLI evidence, this does not mean there wasn't any. *See* discussion of Plaintiff's GAF scores, *infra*. Simply, the ALJ demonstrated a faulty understanding of the law on consideration of post-DLI evidence when he erroneously cut off all presentation of any such post-DLI evidence. Thus, the ALJ did not conduct the analysis required of him in determining whether Plaintiff was disabled – he did not allow admission of any testamentary post-DLI evidence and thus failed to analyze that evidence.[7]

Interestingly, Plaintiff does not now, on the present review, offer any reason to believe it likely or possible that her post-DLI evidence indicates satisfying a pre-DLI condition of disability, contradicts the pre-DLI evidence relied on by the ALJ, or contradicts the ALJ's findings thereon. Nonetheless, despite there being plenty of well-discussed evidence to support a finding of not disabled in this case,[8] it was wrong of the ALJ to cut off all post-DLI evidence that *might* have

---

[6] Plaintiff also mentions a few additional times the ALJ allegedly confined Plaintiff's testimony to her pre-DLI state [dkt 16, p. 3 (referencing R 36-40, 46-47)], although the Court fairly views these as the ALJ asking Plaintiff about the presentation of certain conditions at discrete points in time.

[7] The ALJ did consider two pieces of post-DLI evidence from the record, a 2015 Residual Functional Capacity Questionnaire [R 666-668 and 686-688] and a 2015 initial physician's visit where Plaintiff presented with right hip and leg pain [R 705], and found that both post-DLI records had an unreliable evidentiary basis. The first record the ALJ addresses and discusses his bases for giving it little weight; the second record he discusses in noting why he found Plaintiff less than fully credible. [R 23.]

[8] Including, notably, some evidence the ALJ did not discuss from Plaintiff's 7-day admission to the behavioral health unit at Provena Mercy Medical Center beginning April 30, 2013, "when claimant was admitted to the hospital after combining alcohol and prescription medications" [R 19], as follows:
  The patient reports that she and her husband were fighting over the fact that the patient has not worked in over 5 years…She feels that she is looking for work but cannot make people call her…The patient otherwise reports a variety of psychosocial stressors including financial. The patient has not worked in 5 years…Apparently, husband is upset with the patient that she does not help him with the business…*The patient reports no work-related issues other than she cannot find a job. She has no acute health concerns* and appears to have a rather strained relationship with her husband…Indicates that she walks 3-1/2 miles a day…The

6

supported Plaintiff's claim of disability. However, although it is an extremely close call and one reserved for the ALJ, the Court is not convinced that Plaintiff might not have been able to demonstrate a disability onset at some point before her DLI, potentially, as argued by Plaintiff, based on her "serious symptoms" October 2013 GAF score in combination with her six later (including post-2013) "moderate symptoms" GAF scores[9] or any other post-DLI medical evidence of record (or that Plaintiff might testify to). Although this is plainly a tough row to hoe for Plaintiff, the Seventh Circuit has said she must be afforded the opportunity to try.

IV. Conclusion

Because the ALJ's opinion was undermined by legal error, the Court must reverse and remand for proceedings consistent with this opinion. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff. Plaintiff's Motion for Summary Judgment [dkt. 15] is granted; the Commissioner's Motion for Summary Judgment [dkt. 17] is denied.

Entered: 3/6/2018

_____
U.S. Magistrate Judge, Susan E. Cox

---

patient was an office manager 5 years ago and worked for the same office for 21 years. Then, the physician whom she worked with retired and she was unable to find a new job after that.
[R504-05] (emphasis added).

[9] Plaintiff argues, without reference to Plaintiff's medical record, that "[t]hough GAF scores may not be dispositive, particularly when there is only an isolated score, the ALJ offered no basis for rejecting a series of scores over a period of time that consistently indicate greater than mild limitation." [dkt. 16, p. 9.] While this might be a compelling argument, it does not behoove Plaintiff to make the Court go hand-searching through 500+ pages of medical records (that could not be OCR'd) to find Plaintiff's GAF scores and her corresponding dates of diagnosis as the Court has done here; Plaintiff's counsel is to be chided for this. Although we listed those we were able to find, the Court cannot be sure it found every GAF diagnosis in the record.